of the key law in this area. The major issue here is the duty to defend. And in Washington, defense and indemnity are two separate benefits of a liability insurance policy. Indemnity is paying the claim. Defense, of course, is the insurance company's obligation to provide counsel and all the rest that's necessary for the insurance company to pay the claim. The Washington cases all make an issue out of the difference between the two coverages. In Washington, the duty to defend is set out pretty simply in a vast variety of cases. And what they all... So your primary argument, I take it, with regard to the duty to defend is that there's a possibility or it's conceivable that in looking at the complaint that there could be an accidental shooting, so therefore the duty to defend is triggered, right? That's the gist of your argument on why the duty to defend was there. That's a lot of it, yes, Your Honor. How do you deal with the Peasley case in which the shooting was also accidental, but the Washington Supreme Court said that it was still a criminal act for purposes of a liability insurance policy? Your Honor, it's really hard to compare exclusions from one policy to exclusions from another policy. And I think it's easy to get lost when you look at coverage cases from other states and coverage cases from Washington that involve a policy that's different than the one here. This policy is a little different, and I want to get to that. What's distinguishing from this policy? I'm sorry? What's distinguishing in this present policy from the one in Peasley? Okay. The policy is found in the excerpts of record, and... On page 42 of the excerpts, the liability coverages are set out, and they're very different. What the policy says is we, the insurance company, will pay up to our limit all sums for which an insured is liable by law. Okay. That's standard. They all say that. Because of bodily injury or property damage caused by an occurrence. They pretty much all say that. The next sentence is unique. Quote, we will defend a suit seeking damages. So the first sentence is indemnity. Where I'm at now is defense. We will defend a suit seeking damages if the suit resulted from bodily injury not excluded under this coverage. You'll notice that the word occurrence does not show up in the duty to defend insuring agreement, as it does in the indemnity sentence. This was one of a number of things that Western National simply overlooked when it analyzed the coverage and when it denied... But to cut to the chase, in the policy that we're talking about, one of the exclusions, or the exclusion that we're focusing on, is bodily injury or damage that is the result of a criminal act of an insured, correct? Yes, Your Honor. And then you go to Peasley, and that's an exclusion, a loss that is not covered. And then on Peasley they say losses we do not cover, and that would be bodily injury reasonably expected to result from the intentional or criminal act of an insured person. So criminal act of an insured person in your policy seems to be parallel to Peasley. Well, it is, but the sentence that preceded that is quite different from Peasley. And exclusion 1I, which we're addressing here on page 47 of the excerpts, starts out by saying we don't cover bodily injury which is expected by, directed by, or intended by an insured that is the result of a criminal act of an insured. Does it say semicolon? Yes, it does. Okay. Or that is the result of an intentional. Which is important in these insurance policies, believe it or not. Well, there are two ways to read this. And one of them is to read it that exclusion I2 stands by itself, that any criminal act of an insured which the Rayner case said, although the policy language was different, that an accidental criminal act can be covered by the liability insurance. So let me ask you this. Do you think you have this Peasley case in 97, and then you have the Rayner case later, do you think there's any inconsistency in how the Washington Supreme Court analyzed this criminal exclusion between those two cases? Not really. I think the policies are different. But Peasley doesn't seem to confine itself to the Four Corners rule, right? Not to the extent that a modern court would. Because remember in 2002 we got the Wu case. And Wu sets out extremely clearly, leaves absolutely no doubt about what the insurance company is supposed to do when it's faced with a liability coverage issue. You look at the Four Corners of the complaint, you look at the Four Corners of the policy, and you don't look anywhere else. Unless... By the way, that reminds me, let me ask you this question about the rule in Wu's case, which says insurer has a duty to defend when the complaint construed liberally, alleges facts which could, if proven, impose liability. What facts are alleged in this complaint? I don't mean legal conclusion, but facts from which liability could be imposed. Negligence. That's not a fact, that's a legal adjective. What's a fact that's alleged in the complaint? Discharging a firearm. The discharge of a firearm? Yes. Without any characterization. Well, the negligent discharge of a firearm. Well, it says intentional, negligent, what does the complaint say? Intentionally, recklessly, or negligently, right? Yes. But as your conversation with Judge McEwen indicated, a negligent discharge of a firearm, is that what happened, claims happened in Beasley? Yes. Because it's still a crime, could be a crime. Could be. Right? Well, what distinguishes that crime or that scenario from the bare bones pleading in this case, that a discharge of a firearm is possibly negligent? Not very much beyond the development of the case law. What is it that does? What is the not very much? What's the difference? In terms of the factual allegations in the complaint? I don't recall the complaint that well. Well, if there's no difference, then doesn't Beasley govern? Not if the policy is different, and not if the law has changed since Beasley was decided. Well, that's a question. That's why I asked you the question earlier, whether you thought there was any inconsistency in the way the Washington Supreme Court has treated these. Because I think it kind of comes down to whether your allegation that there was a negligent discharge of a firearm falls under the Criminal Act exclusion. And we know from Beasley Criminal Act doesn't, that it includes unintentional acts. And I guess what we don't know, and this is what I think the dissent in these various cases we're concerned about is, is there any limit to that? Because if you construe it liberally, which I think we're supposed to in terms of these duty to defend, what kind of allegation is excluded because it's negligent Criminal Act versus just a negligent act, which should be included in the duty to defend? So how do you make a distinction between the two? What do you think you have to allege so that the reader of the complaint, meaning the insurance company, can figure out in or out? This is a pretty bare bones complaint. It is. It is. And maybe purposely so. I understand why that might have been tactical. And we have the competing interest of construing the complaint literally, or liberally, to create coverage, and construing the policy liberally to create coverage, strictly not to exclude coverage. All of that was developed more in the cases Wu and Vanport Holmes and all of those that followed it. So I think the passage of time and the opinions that came down since Peasley are very important. So that then changes your answer. I mean, what you're saying is you think the Washington Supreme Court actually changed the standard for benchmarking and interpreting the exclusions? Because just because the case is old doesn't mean it. I mean, it's still binding. And when we're trying to figure out, our job is to figure out what is the Washington law and to best divine that from the Washington Supreme Court cases. You said you don't really think there's any inconsistency in them. So reading them all together, you're still stuck with Peasley. So then where do you go? I think you go to the modern cases that address the word conceivable. And you'll see in the briefing that at the deposition of the claims attorney who handled this, I asked her about the word conceivable. And those on the defense side aren't quite willing to admit that conceivable means what it really means. She said something like, well, I don't have to imagine every possibility. And that's incorrect. They do have to imagine every possibility. In part, I think the reason for that and the reason it makes sense is that the duty to defend can be a temporary duty that ends when or if a court finds no coverage at all. Well, if you had just pure negligence here, but then you go on because they say, well, these acts aren't just negligent, but they're beyond the pale of human decency and the tort of outrage. By combining that with the word negligently, have you really tipped yourself over into the criminal arena? I don't think so, Your Honor. Washington allows alternative pleading. This is an alternative pleading, and I think it's absolutely acceptable. You might want to save the remaining time. I do. I have two minutes left. Thank you, Your Honor. Good morning. Dana Ferristine on behalf of Respondent Western National Insurance Company. It's an honor to appear before the Federal Court of Appeals, and I want to thank the court for taking the time to hear this case. There's no doubt that the facts of this case are both tragic and extraordinary. But it's also true that this is not a close call on insurance coverage. There's no doubt about what actually happened here. Well, but that's not the rule, is it? We're not supposed to look at what happened. Let's assume we're looking at duty to defend, not indemnity. If you're only looking at duty to defend, then the standard is roughly what my adversary said, which is that you look at the four corners of the complaint, and if there's an ambiguity or it's unclear, then you look to the extrinsic evidence. But it's important, and what I said I think is accurate in talking about this, is that extrinsic evidence is relevant to this appeal because there are two orders that are on appeal, the duty to defend and the duty to indemnify. In fact, the first order on appeal is the duty to indemnify. Maybe you've probably got the gist of it. We think we can figure out that duty to indemnify easier than the duty to defend, so it would be probably helpful to spend your time there. Let me ask you this. So you're only looking at the complaint plus whatever the law is and trying to figure out the duty to defend, and Washington's very liberal on that. So what if you had somebody, like you've got a gun, and he, like, trips down the stairs and shoots the lady and her baby? Pretty accidental. Why couldn't that ‑‑ if that happened, do you think there would be a duty to defend? Well, those are certainly facts that in the right case might be alleged or could be alleged, assuming counsel was meeting their obligations under Rule 11 and the other ethics rules. Yes or no, if that happened, if that was the allegation, that you tripped down the stairs and shot the lady, would that trigger the duty to defend? Maybe. It would depend on the totality of the complaint and whether holding it up against the criminal statutes, it still constitutes manslaughter, felony manslaughter. All right, take this complaint, then. All it says is that there was a ‑‑ excuse me, the victim died of a gunshot wound, right? And that was done either intentionally, recklessly, or negligently. Now, if you just focus on negligently, why doesn't that trigger the duty to defend, a negligent shooting? It could be basically the guy tripping down the stairs. Well, Your Honor, in your scenario, like you said earlier, negligent is being used, in effect, as a legal conclusion, not as a specific fact. Well, but what else do you need in a notice pleading state? You have to parse out all the facts that support negligently in your complaint? I don't think so, do you, in Washington? You don't, but at the same time, if you look at this complaint, because, frankly, this isn't a hypothetical scenario. We have a complaint, and it doesn't just say negligently, intentionally, or recklessly. It says a lot more than that that I think is relevant to the duty to defend analysis, and the Court already pointed to that language, and I'll just remind the Court that in paragraph 2.3, the allegation was that Mr. Erb's conduct in shooting was, quote, in callous disregard for the safety and well‑being of decedent Anne Marie Wargacki and her unborn child, and are not only negligent, but so far beyond the pale of human decency that they constitute the tort of outrage. It's not conceivable that that's an accident. Somebody falling down the stairs and letting a gun... Mr. Williams' answer to that was that, well, Washington allows pleading in the alternative, and just one of the alternative theories. It's not pled as an alternative theory. Well, why not? The complaint has to say this is an alternative theory? He says negligently, intentionally, or recklessly. And then goes on in two paragraphs later and says not only negligent, but so bad to constitute the tort of outrage. I know that, but if you take the so bad allegations, obviously it's beyond negligence. So it's, you know, it has to be in the alternative to negligence, doesn't it? Intentional or at least, you know, reckless. When you say intentional, negligent, or reckless, you are saying them in the disjunctive. So you're saying one of the three, but then when you go on and say it's also outrage, it's not just negligence, it's outrage, you are clearly indicating that it's... It's sort of like saying, I don't know if this is a pleading rule, but the pleader is making an election at that point. Saying I'm going with intentional and forget about the negligence. I don't think you read a complaint that way, do you? Certainly not how I read it. Well, I read it that way, and certainly my client read it that way. Certainly Judge Layton read it that way. And I think what Judge Layton had to say about this in the district court I think is frankly dead on. And he said... No pun intended. Absolutely. This is clearly not a laughing matter, and I don't want to make light of the facts, and this is a terrible tragedy. But all the same, it's not a covered claim. And Judge Layton said, and whatever Erb's actual mindset or motive, the shooting was an intentional criminal act, which is excluded from coverage as a matter of law. This was known to all from the very beginning, and no amount of spin, massage, speculation, or sophistry can make it otherwise. You know, it's not that I disagree with Judge Layton, but when he says, you know, this is known to all, he's obviously referring to facts or allegations outside the four corners of the complaint, right? Which is appropriate to consider when the complaint is unclear or ambiguous. Well, but the cases say it's only appropriate to consider if the consideration is necessary to give rise to the duty to defend, not to defeat the duty to defend. I haven't come across a Washington case that says you can look outside the complaint for facts that's going to defeat the duty to defend. No argument, but it's still relevant insofar as Western National did look outside the facts of the complaint to see if there might be something that indicated that this was an accident. What they found confirmed exactly what we thought this was. It's a tragic, intentional murder-suicide. And so... You raise an interesting question. I mean, that goes to their discharge of whether they acted in good faith. If the complaint would give you the possibility of a duty to defend, what happens if you look outside the complaint and realize that these facts are just so egregious that it couldn't possibly be anything other than a criminal act? Does that change it? If your hypothetical circumstance, which is different than here, and let's just say that the plaintiff's attorney in this case had alleged this was an accident. And then they went and found a news article that said, no, it's not an accident, it's a murder-suicide. In that different circumstance, the appropriate recourse would be to defend under reservation and file a declaratory judgment. But we don't have that here. Instead what we have is somebody waving a magic wand over a complaint, calling it intentional, reckless, or perhaps negligence, then saying it's not just negligence, it's outrage, and then saying, oh, but by the way, we think it's an accident and you should cover it anyway. And that's just not the duty to defend. It's supposed to be liberal. It's supposed to be broad. You're supposed to stretch it out. But at some point there's got to be a limit. And if you were to say there's a defense obligation, that's really the end of the limits. And in fact, I think when Mr. Williams was trying to get away from the Peasley case, he was trying to focus on the language in the insuring agreement. What he was in effect trying to say to you, he didn't say it explicitly, but what he was saying is, any time a carrier gets a tender under this policy, they have to defend. It doesn't matter what it is. As long as it's a tender, they have to defend. So what does the tort of outrage, I mean, they say it might not be just negligent, but it's a tort of outrage. So could you have in Washington law a civil tort of outrage that resulted in death that also was not a criminal act? I haven't analyzed that. But the important aspect of the tort of outrage is that one of the elements is intentional conduct. And what we have here is a shooting. And when you add shooting and intentional conduct together, it is not conceivable that that's not a criminal act. At that point... And that if you look at Title 9A and the definitions of at least manslaughter, you have a serious felony. I guess, is Peasley the best case to support your position? I'd say maybe it's Peasley 1 and Rainer 1A. And I will just emphasize, because the court brought this up, those are the cases in Washington. And there's no subsequent case, whether they want to talk about Wu or Aaliyah or the recent GIA decision, that say anything that in any way retracts from the outcome in those cases. That is the binding law in this case that ought to guide this court. And I'll just add that it's not just Washington. There's no case anywhere that says there's coverage for a murder-suicide. Now, counsel didn't address the issues of bad faith or coverage by estoppel. But recognizing that he's going to get up for a couple of minutes, I at least want to briefly touch upon it. Because I think there's a couple of important points to keep in mind. A failure to defend alone does not warrant coverage by estoppel. It's not bad faith. In order to find coverage by estoppel, which is a discretionary remedy, an insurer has to act in bad faith, which means that their conduct has to be unreasonable, frivolous, or unfounded. And the evidence that's in this record, before the district court on summary judgment, indicates that Western National's conduct was careful and reasoned. Keep in mind, they were approached by Mr. Erb's estate's lawyer, and he freely admitted, this is a murder-suicide. He comes to them and says, hey, I've got a murder-suicide, we're being sued, and then gives them the complaint. They look, they investigate, what they find is news articles confirming that it's a murder-suicide, and then they get a complaint that says we've got a shooting death with outrageous conduct. I respectfully submit to the court that on that record, the only reasonable conclusion is that's reasonable to deny, and not defend. So there's no bad faith here, which by itself gets rid of coverage by estoppel. The second point that I'll make is that coverage by estoppel, as I briefly said before, is a discretionary remedy. The case law that talks about it says it's one available remedy, not necessarily the remedy. By the way, speaking of the bad faith claim, wouldn't it follow that, suppose, speaking hypothetically, if we were to reverse on the duty to defend, that that would, in effect, revive the bad faith claim? There would potentially be a question of fact. I believe that there's enough on the record to still rule that no reasonable jury could find bad faith based on this evidence. But at most, the point you make is an excellent one. At most, this court, if it were to disagree with the district court on the defense obligation, would remand this case. That's the most that could be done here. The other point that I'll make is that coverage by estoppel is equitable in nature. And in this case, if you look at the totality of what happened, I'll just point out that in the trial court of the tort case in Pierce County Superior Court, plaintiff's counsel freely admitted and argued to the court in obtaining this judgment that it was a murder-suicide. I think his words were something along the lines of Mr. Erb's conduct was motivated by the fact that his girlfriend was pregnant. Clear indication that we've got murderous intent, no accident. What they're now, in effect, saying is give us $7 million on the judgment that we obtained, because this was an accident and they should have defended. Those are absolutely inconsistent concepts. Whether you want to characterize it as judicial estoppel or merely saying it's inequitable, I don't believe there's any way you could ever get to an outcome where coverage by estoppel would be an appropriate remedy in this case. In closing, I guess all I can say to the court is common sense prevailed in the trial court, and I'd ask that common sense prevail here today, and that the court affirm and find no coverage, no duty to defend, no duty to indemnify. Thank you. Counsel's last argument had to do with Ben Barkas trying the underlying case in Superior Court in Pierce County, and the problem with the argument that was made here is that Ben Barkas did not represent Michael Erb at that time or his estate. Ben Barkas represented the estate of the young lady who was a victim of whatever Michael Erb did. So what he says happened or what he argues happened does not in any way bind the estate of Michael Erb. His opponent in that trial in terms of whether it was a suicide, a murder, or anything else. Two, we have to remember, I think, that in Washington, the insurance company must defend the entire case if one allegation in the complaint can conceivably be covered under the policy. What do you do with the damages section of the underlying complaint where paragraph 4.1, it says, quote, as a result of the aforementioned negligent acts of the above-named defendant, plaintiffs have suffered and will continue to suffer in the future the following damages. What do you do with that? And it's the same problem that occurred in Wu. The insurance company can't look at the totality of the circumstances and make a judgment that says, oh, here's what happened. Judge Leighton made the same mistake. It works on indemnity. It doesn't work on defense, because the four corners rule says you look at those two documents and nowhere else. It's not restricted. For those reasons, I urge the court to reverse the district court.
judges: Tashima, McKeown, Nguyen